BURNHAM and WIFE *vs.* DALLING.[*]

BALE *vs.* same.

MILLAR and WIFE *vs.* same.

1. If a guardian, with the consent of his wards when of age, agree to give time for the payment of a security in his hands belonging to them, upon receiving the guaranty of a third person, at a charge of ten per cent., the guardian, in the settlement of his accounts, will be allowed the ten per cent. paid under that arrangement.

2. No defence can be allowed at the hearing which is not set up in the answer, and no evidence can be received on any issue not raised by the pleadings.

---

This cause came up for hearing upon exceptions by the complainants to the master's report.

*Mr. Woodruff*, for exceptants.

*Mr. H. A. Williams*, for defendant.

---

[*] CITED *in Foster* v. *Dey*, 12 *C. E. Gr.* 601.

THE CHANCELLOR.

This cause comes up on exceptions taken to a master's report, made in the above three suits, brought to compel the defendant to account to the several complainants as their guardian. These suits had been consolidated into one by order of this court, before the reference.

The accounts are long and complicated, and involve some intricate questions of fact and law. The report of the master is made with care and ability, and presents the situation of the estates and the conclusions of the master with great clearness.

There is no real difficulty as to any of the exceptions, except so much as relates to the amount of $5911.73, alleged to have been received by Dalling as guardian, from John Hutchins, the administrator, in the state of Ohio, of William Bale, the father of the complainants. This was part of the proceeds of the sale of real estate in Ohio, belonging to the decedent. The bills charged that the defendant had received this sum in money or securities from Hutchins as administrator, and had remitted the securities to Hutchins to collect for him as guardian. The answers deny that he had received the sum in money, but admit that he had received a note of William P. Goodrich for that sum, payable in six years; that this note was not paid at maturity, and that he returned it to Hutchins, and it was received by him; that it was not returned to Hutchins to collect for him as guardian, but to collect for the heirs.

It was shown that such a note, secured by mortgage on the property sold, was taken by the administrator, and by him paid over to defendant; that when it came to or near maturity, it was thought by all concerned, that the maker would not be able to pay it, and that the mortgaged premises, subject as they were to a prior mortgage, would bring but a small part of the sum. A proposition was made to give additional security for the amount, upon receiving an extension of the time for payment. Hutchins advised this, and

offered as an inducement to accept it, that he would, for ten per cent., assume the trouble and expense of collecting it, and would guarantee its payment. This proposition was accepted, and a written agreement sanctioning it, was signed by Hutchins on the one part, and by Elizabeth Bale, (who afterwards married the complainant, Burnham,) John Bale, and the defendant as guardian, on the other part. The complainant, Margaret Millar, did not sign it, as her share of this money was paid to her in another way; but it was signed in the presence of her husband, John D. Millar, who is the attesting witness to it. John Bale was over twenty, and not yet twenty-one, but had, after arriving at full age, adopted and approved it. John Hutchins, the administrator, has paid into this court the full amount of the principal and interest due in this matter, less the ten per cent., which is now the only amount in controversy.

I think these facts fully justify the master in the conclusion to which he has arrived, that the heirs of William Bale had taken the collection of that amount upon themselves, and discharged the defendant from accounting for it; that they had agreed to allow the ten per cent. for trouble and guarantee, and that the defendant could not be made liable for it on the ground that it was an improvident and useless expense.

But a serious question was raised, and pressed with great ability by the counsel for complainants, upon the right of the master to receive or consider this agreement upon the pleadings in this case. The agreement was not set up in the answer, and it was contended that the defence set up by it was not in the issue made by the pleadings.

It is, without doubt, a well established principle, that no defence can be allowed that is not set up in the answer, and no evidence received, except on some issue raised by the pleadings. 1 *Daniell's Ch. Pr.*, (3d *Amer. ed.*) 726; *James* v. *McKernon*, 6 *Johns. C. R.* 565; *The Barque Chusan*, 2 *Story's R.* 468–9; *Gres. Eq. Ev.* 159; *Brantingham* v. *Brantingham*, 1 *Beas.* 162.

The only question is as to the application of the rule to these pleadings. The issue raised is whether the defendant

sent this note to Hutchins as his agent, to be collected for him as guardian, which is charged by the bill, or, whether he returned it to him to be collected by him for the children of William Bale, as set up by him in the answer denying the charge in the bill. On this matter, the bill does not seek to make him liable in any other way. It does not charge him with carelessness in accepting a bad note, or in returning a good note secured by mortgage, and taking securities for a less value. And on the issue as made, this agreement of the children of Bale with Hutchins, is proper evidence. It shows clearly that the note was returned to be collected by Hutchins for the children of Bale, as alleged by the defendant's answer. The conclusion of the master is correct, and the evidence by which he arrived at it legal and admissible.

On the points raised by the other exceptions, the master's report is fully sustained by the evidence, and the exceptions must be overruled.

Except in the matter of setting up in his answer the irregular and void accounts rendered in the Orphans' Court as a defence to his accounting here, for which he was ordered to pay the costs until the interlocutory decree, the conduct of the defendant, both in the management of the estate of his wards, and in conducting his defence in this cause, has shown capacity, integrity, and candor; and beyond this he has displayed activity, energy, and zeal for the interest of his wards, and the kindness and generosity of a parent toward them. There is no reason why he should be made to pay any of the expenses of this accounting out of his own pocket. I shall not disturb, directly or indirectly, the order for costs on the interlocutory decree; but shall order the costs of the defendant, and a proper fee for his counsel, to be paid out of the estate.